UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLAVAA NOA,<br>　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | Case No. 17-cv-05147-MEJ<br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 19, 20 |

**INTRODUCTION**

Plaintiff Polavaa Noa brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. PMSJ, Dkt. No. 19; DMSJ, Dkt. No. 20. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record (AR), and the relevant legal authority, the Court **GRANTS IN PART** Plaintiff's motion and **DENIES** Defendant's cross-motion for the reasons set forth below.

**SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

**A.　Background**

On March 31, 2013, Plaintiff protectively applied for supplemental security income, alleging disability on the basis of diabetes, sleep apnea, and uterus cancer surgery beginning on January 1, 2012. The Social Security Administration (SSA) denied Plaintiff's claim initially and on reconsideration, finding that Plaintiff did not qualify for benefits. Administrative Law Judge (ALJ) Mary Parnow conducted a hearing on February 4, 2016, and a supplemental hearing on May

1 19, 2016. Plaintiff testified in person at both hearings and was represented by counsel, Ashlei Schulz. Vocational Expert (VE) Tracy Young testified at the February hearing; VE Thomas Linvill testified at the May hearing.

**B.     The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since March 31, 2013. AR 22.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, peripheral neuropathy, degenerative disc disease, and obesity. AR 22.

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

2

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 22-23.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity (RFC). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work with a number exertional limitations. AR 24-28. The ALJ did not include in Plaintiff's RFC the need to take any breaks to administer insulin shots.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined that Plaintiff could not perform past work as fast food worker, babysitter, and case aid. AR 28-29.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of

3

a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform sedentary, unskilled work that existed in significant numbers in the national economy: document preparer, addresser, and cashier II. AR 29-30.

**C.   ALJ's Decision and Plaintiff's Appeal**

On July 13, 2016, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 20-30. This decision became final when the Appeals Council declined to review it on July 5, 2017. AR 1-3. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On February 15, 2018, Plaintiff filed the present Motion for Summary Judgment. On March 15, 2018, Defendant filed a Cross-Motion for Summary Judgment. Plaintiff filed a Reply on March 29, 2018.

**LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports

the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**DISCUSSION**

**A.     Severity of Mental Health Impairment**

Plaintiff argues the ALJ erred in finding her depression was not a severe impairment at Step II of the sequential analysis. PMSJ at 8-10, 13-14. Specifically, Plaintiff argues the ALJ failed to give proper weight to the opinion of examining physician Dr. Katherine Wiebe; ignored the opinion of Plaintiff's treating physicians; and erred in concluded the condition was not severe because any limitations did not last 12 months.

1.     <u>Dr. Katherine Wiebe, Ph.D.</u> (AR 1648-1663)

Plaintiff hired Dr. Wiebe to conduct a psychological evaluation in support of her application for Social Security benefits. Dr. Wiebe reviewed Plaintiff's records from Washington Hospital Healthcare System and Sutter VNA & Hospice.

Dr. Wiebe evaluated Plaintiff in person on October 26, 2015 to determine her current cognitive and emotional functioning. Dr. Wiebe provided a background of Plaintiff's family, social, academic, employment, legal, medical, and psychiatric history. She administered a number of exams. Based on a functional exam, Dr. Wiebe noted Plaintiff evidenced problems with depression, fatigue, and memory. Dr. Wiebe also observed that Plaintiff's mood was depressed, her affect restricted, and her thought content tended towards concerns about conflicted relations with family members. Plaintiff also reported passive suicidal ideation. She evinced some impairment in reasoning, insight, and judgment associated with her psychiatric problems.

Dr. Wiebe administered a number of tests: RBANs-Form A; Annotated Mini Mental State Examination; Clock-drawing task; Trail Making A & B; BDI-II; BAI; and MCMI-III. Based on

her clinical interview and these tests, Dr. Wiebe opined that Plaintiff's pre-morbid IQ was within the average range. There was no overall impairment in her attention/concentration, at least not in the structured testing environment. There was minimal impairment in executive functioning. There was mild to moderate impairment in memory functioning: she scored extremely low on immediate memory, but average on delayed memory. She is able to learn new information with multiple repetitions and can be assisted with memory cues. Her language skills were normal. Her visual/spatial abilities evinced no impairment. Dr. Wiebe opined Plaintiff functioned with mild to moderate impairment in sensory/motor abilities: she noted Plaintiff evinced depression fatigue, while also noting Plaintiff reported insomnia and problems due to sleep apnea and diabetes. Plaintiff's results on the BDI-II indicated she had severe depression and her BAI results indicated she had severe anxiety. Plaintiff's MCMI-III profile suggested an intense conflict between her dependency and her feelings of guilt and self-condemnation—as a consequence of her entrapped feeling, Dr. Wiebe opined Plaintiff may act in a petulant and self-pitying manner; her discontent and moodiness frequently evoke critical if not humiliating reactions from others; she cannot act alone; she frequently behaves incompetently. Dr. Wiebe opined that Plaintiff's MCMI-III profile suggested Plaintiff suffered from Major Depression and Adjustment Disorder with Anxiety, as well as a number of other personality disorder patterns.

In the charts she attaches to her opinion, Dr. Wiebe indicates Plaintiff experiences mostly normal, minimal, or mild limitations in the major functional areas, but that she has moderate limitations in the areas of motor skills, activities of daily living (ADLs), and social functioning; and severe limitations in short term memory. Dr. Wiebe further indicates Plaintiff experiences mild limitations in several mental abilities and aptitudes needed to do unskilled work; moderate limitations in carrying out instructions, maintaining attention and concentration for two hour segments, performing at a consistent pace, getting along and working with others and interacting with the public, and maintaining regular attendance. Dr. Wiebe finally indicates that Plaintiff experiences marked limitations in responding appropriately to changes in routine work and to complete a normal workday without interruption.

6

In her narrative, Dr. Wiebe explains that Plaintiff's test results include impairments affecting her ability to remember directions and tasks, as well as impairments that could affect her ability to communicate effectively with supervisors, coworkers, and the public, and could affect her ability to adhere to the demands of a regular work schedule. She further explains that Plaintiff's psychiatric, personality, and cognitive functioning problems, combined with her physical problems (including diabetes, sleep apnea, obesity and pain symptoms) may make it difficult for Plaintiff to function effectively in a full-time job for at least 18 months.

### a. Legal Standard

"Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an opinion of a treating physician should be favored over that of a non-treating physician. *Id.* at 830-31. However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The opinion of an examining physician generally is entitled to greater weight than the opinion of a non-examining physician, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008), and the "opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician, *Lester*, 81 F.3d at 831. *See also* 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.").

In order to reject the "uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (internal quotation marks and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing

specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ must do more than offer [] conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted). An ALJ errs when he or she does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). In other words, it is error for an ALJ not to offer a substantive basis before assigning little weight to the medical opinion. *See id.* Generally, the SSA will give greater weight to an opinion that is more consistent with the record as a whole. 20 C.F.R. § 416.927(c)(4).

b. <u>Analysis</u>

Dr. Wiebe is an examining physician, and the ALJ did not identify any treating or other examining sources that contradicted her opinion about the limitations resulting from the combination of Plaintiff's physical and psychiatric conditions. The ALJ accordingly could not reject Dr. Wiebe's opinion without providing clear and convincing reasons based on substantial evidence for doing so. Even if the opinion had been contradicted by that of a treating or examining physician, the ALJ could not reject it without providing specific and legitimate reasons for doing so, based on substantial evidence. The Court reviews the reasons articulated by the ALJ for giving "little weight" to Dr. Wiebe's opinion.

i. Lack of Treatment

The ALJ found Dr. Wiebe's opinion was "wholly inconsistent with the treatment record before and after that one-time exam": Plaintiff's doctors never referred her to psychiatric treatment, she never sought mental health treatment, she was never hospitalized or prescribed psychotropic medication, and she herself questioned whether she was depressed. AR 22.

The ALJ fails to acknowledge Plaintiff's testimony that her primary doctor prescribes depression medication to Plaintiff because he believes she is depressed. AR 57-58. Plaintiff does

8

not take that medication because she is afraid it would worsen her feelings. *Id.* The ALJ did not reject this testimony. AR 27-28. Without more information, Plaintiff's lack of treatment for depression does not provide a specific and legitimate reason to reject Dr. Wiebe's diagnoses nor her assessment of Plaintiff's mental health impairments on her ability to perform work-related tasks. *See Nguyen*, 100 F.3d at 1465 ("It is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."); *see also Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("A claimant may not be faulted for failing to seek treatment, particularly where the claimant suffers from mental illness.").

### ii. Assessment in Excess of Findings

The ALJ found Dr. Wiebe's assessment appears in excess of the exam findings and the lack of signs of mental health conditions or limits in the medical records. Dr. Wiebe opined that Plaintiff's memory impairments interfere with her ability to remember directions and tasks. The ALJ acknowledges Dr. Wiebe's findings that Plaintiff scored "extremely low for immediate memory" but states that other clinical findings included intact memory and attentiveness. AR 23 (citing Ex. 22F at 3). The exhibit the ALJ cites in support of this statement contains notes from a neurology appointment Plaintiff attended for severe back pain in December 2013 – several months before her primary care doctor first notes a diagnosis of depression (AR 1360). Upon performing a physical exam, her neurologist noted Plaintiff's memory and knowledge "appears intact." AR 1319. The ALJ does not explain how this observation, made by a treating physician who does not specialize in mental health and was examining Plaintiff for back pain before she first developed depression, contradicts or undermines the opinion of Dr. Wiebe, a mental health expert who examined Plaintiff almost two years later specifically for the purpose of establishing any impairments based on mental health. Dr. Wiebe opined that Plaintiff's ADLs were moderately impacted by her depression, but the ALJ concluded Plaintiff's limitations in this area "appear chiefly related to her physical conditions." AR 23. The ALJ does not explain the basis for her conclusion, and she fails to acknowledge Dr. Wiebe's opinion that Plaintiff's mental health

9

impairment, in combination with her severe physical impairments – diabetes, sleep apnea, obesity and pain – may exacerbate the impact of her impairments on her ability to work. Similarly, the ALJ acknowledges that Plaintiff's treaters mention Plaintiff's depression and flat affect several times in the record, but that they also note she appeared pleasant and cooperative at other times. AR 23. The ALJ does not explain why even severe depression would prevent Plaintiff from being pleasant and cooperative during a medical appointment. These are not specific and legitimate reasons based on substantial evidence for rejecting Dr. Wiebe's opinions.

### iii. Subjective Complaints

The ALJ found the exam appeared to overly rely on subjective complaints. The ALJ does not explain how a mental health examiner can evaluate a claimant's mental health impairments less subjectively than by administering the battery of tests Dr. Wiebe administered to Plaintiff over the three hours she spent evaluating her. The ALJ does not identify what more objective methods are available to such examiners. Dr. Wiebe concluded the results of her assessment were considered to have validity given the congruency of observations made during the assessment with results from testing and interview information; records reviewed; MCMI-III testing results, and the sensitivity of information Plaintiff shared about herself. AR 1649. The ALJ offers no specific and legitimate reasons based on substantial evidence to reject Dr. Wiebe's assessment of Plaintiff's subjective reports in that context. *See Ryan*, 528 F.3d at 1199-1200; *see also Rogers v. Colvin*, 970 F. Supp. 2d 1147, 1159 (W.D. Wash. 2013) (ALJ's finding that examining physician overly relied on subjective reports of symptoms and limitations provided by claimant not based on substantial evidence where examiner reviewed records, administered tests, and examined the claimant).

### iv. Plaintiff Ordered Report

The ALJ accorded "little weight" to Dr. Wiebe's opinion because Dr. Wiebe was not an independent examiner, but was hired by Plaintiff. Absent evidence undermining the credibility of Dr. Wiebe's report, the fact it was obtained based on Plaintiff's request is not a legitimate reason for rejecting it. *Reddick*, 157 F.3d at 726 ("Our opinions reveal that the mere fact that a medical

10

report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report. Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report.").

### c. Summary

The undersigned concludes that none of the ALJ's reasons for according little weight to Dr. Wiebe's opinion were specific and legitimate (much less clear and convincing) or based on substantial evidence. The Court nonetheless cannot accept Plaintiff's invitation to credit Dr. Wiebe's opinion as true. As discussed above, Dr. Wiebe opines Plaintiff suffers from a few marked or severe impairments, but her findings are mostly of no, mild, or moderate limitations. Furthermore, several of Dr. Wiebe's opinions are conditional: Plaintiff's impairments *could* affect her ability to communicate effectively with supervisors, coworkers, and the public, and *could* affect her ability to adhere to the demands of a regular work schedule; her psychiatric, personality, and cognitive functioning problems, combined with her physical problems *may* make it difficult for her to function effectively in a full-time job for at least 18 months. The record does not establish what impact these limitations would have on Plaintiff's ability to work. *See, e.g., Hoopai v. Astrue*, 499 F.3d 1071, 1075-78 (9th Cir. 2007) (noting the Ninth Circuit had "not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation.").

### 2. Treating Physicians & Duration

Plaintiff argues the ALJ ignored medical evidence of record establishing she suffered from depression. PMSJ at 10. This is not the case. The ALJ acknowledged the record contains diagnoses of affective, adjustment, and other specified personality disorder, and stated "some objective medical evidence supports these ailments"; the ALJ ultimately found them not severe either because they did not and were not expected to last longer than 12 months, or they did not cause significant limitations in Plaintiff's ability to work. AR 22 (citing ten exhibits and "Medical Expert Testimony"); *see also* AR 23 (acknowledging that "[f]indings upon treatment exam include

11

depressed mood and flat affect."). Defendant is correct that the mere diagnosis of a condition does not mean it is severe or disabling. *See* DMSJ at 7 (citing *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982)). Plaintiff identifies no records besides Dr. Wiebe's that address the impact of her depression on her ability to work. *See* PMSJ; *see also* AR 286-88 (listing evidence of severe impairments). Thus, the fact several of Plaintiff's treating physicians noted in her records that she suffered from depression does not in and of itself establish Plaintiff experienced depression that was sufficiently severe to interfere with her ability to work. The ALJ was not required to address every single record that supported the same findings. There was no error here.

In light of her position, Defendant does not specifically address the evidence of duration. Given evidence in the record that Plaintiff's treaters diagnosed Plaintiff with depression as early as February 2014 (AR 1360), and given Dr. Wiebe's opinion that Plaintiff's impairments are likely to affect her ability to work for 18 months, there is evidence of duration sufficient to create a triable issue of fact.

**B.    Lay Witness Testimony**

Plaintiff's older sister, Miriama Noa, submitted a declaration in support of Plaintiff's application for Social Security benefits. AR 300-01. Ms. Noa declares Plaintiff lives with her most of the year; "takes her time doing things;" and needs help with dressing, cooking, and errands. She describes how Plaintiff's demeanor and level of activity over time have changed; Plaintiff is no longer active in church or family reunions, is down and feels overwhelmed, looks depressed, is in pain, and is emotional all the time.

Because of Ms. Noa's "close relationship" with her sister, the ALJ "d[id] not find her descriptions of the claimant's condition or limitations to be entirely objective. However, [the ALJ] gave some weight to her descriptions of the claimant's activities and limitations to the extent that they are consistent with the medical record and the claimant's own report of her abilities." AR 28.

"'The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant everyday is of

12

1    particular value[;] . . . such lay witnesses will often be family members.'" *Regennitter*, 166 F.3d

2    at 1298 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). Thus, to the extent the

3    ALJ rejected any portion of Ms. Noa's declaration on this basis, it was error.

4    However, it is not clear from the ALJ's decision what descriptions she credited, and what

5    descriptions she rejected. The medical record is more than a thousand pages long, and the ALJ

6    does not specify what portions of Ms. Noa's declaration are not consistent with the medical

7    record. To the extent the ALJ rejected any portion of her declaration on this basis, the ALJ did not

8    sufficiently articulate her reasons to allow this Court to conduct a meaningful review of her

9    analysis. This was error.

10   Ms. Noa's descriptions do appear entirely consistent with Plaintiff's own testimony

11   regarding her own abilities. Plaintiff testified that working as a child care worker would be "really

12   hard" because it requires picking up, cooking, showering, and changing children, which would be

13   painful for her now; she cannot watch any children under 10 on her own. AR 52, 64. She testified

14   she had significant back pain standing for more than 10 minutes or if she walks too much. AR 54.

15   She stated she could walk for one block without a cane, but if she goes further, her legs and back

16   will act up; it takes her half an hour to walk a block. AR 55-56. She can stand for 30 minutes.

17   AR 59. She can pull herself up the stairs if there is a railing. AR 56. She is unable to sleep

18   through the night because of her diabetes and her sleep apnea, making her fatigued the next day;

19   she is tired most of the time. AR 56-57. Her doctor thinks she is depressed and has prescribed

20   medication that she refuses to take because she's afraid it will make her mood worse; she is

21   depressed about the way she is living right now. AR 57-58. On an average day, she is around her

22   family and will help a little with their classes; she has trouble getting dressed from the waist down,

23   so her nieces help her with her socks and pants. AR 58-59. On good days, she enjoys being with

24   her family and tries to help down by wiping tables, washing tables where she can stand and do it,

25   and sweeping; but mostly kids do the chores. AR 59. On bad days, she cannot help at all. AR 59.

26   Her sister takes her to all of her appointments. AR 61. She no longer has any hobbies. AR 61.

27   To the extent the ALJ rejected any part of Ms. Noa's declaration on the basis it is inconsistent with

28   
13

1 Plaintiff's own reports, the ALJ's reasons were not based on substantial evidence.

If the ALJ rejected any part of Ms. Noa's declaration, this error was not harmless. Not only is Ms. Noa's declaration entirely consistent with Plaintiff's descriptions of her mood and ADLs, but it also corroborates Dr. Wieber's opinion regarding the impact of Plaintiff's depression on her ability to work, including the impact of her fatigue and her ability to work with others.

## C. RFC and Ability to Perform Work

Plaintiff was diagnosed with Type II diabetes in 2004. AR 312, 335, 1450 (Type II diabetes, chronic, uncontrolled, since 3/2014); *see also* AR 333 ("very high blood sugars" in 2012, started on glipizide, metformin, and Lantus). Her diabetes is not well-controlled. AR 26, 43 (medical expert testified Plaintiff was an "insulin dependent diabetic. Control has been not real good."). Dr. Prasad Katta, MD, the physician overseeing her diabetes treatment, prescribed insulin glargine injections (Lantus) twice a day, Victoza injections once a day, insulin lispro (Humalog) injections three times a day (once in morning, once at lunch, and once at dinner), and testing for blood sugar levels four times a day using Freestyle Lite Strips. AR 1605-06 (July 22, 2015 encounter); AR 1622 (September 9, 2015 encounter); AR 1645 (October 2, 2015 encounter), AR 1670-1675 (December 10, 2015 encounter); *see also* AR 60 (listing prescription medications during hearing, including Lantus, Humalog, and Victoza for diabetes).

During the May 2016 hearing, VE Linvill agreed with VE Young that "in general the numbers for sedentary unskilled work are low, but I can identify a few."[2] AR 79. VE Linvill

---

[2] In fact, VE Young had testified during the February 2016 hearing that someone with Plaintiff's RFC could perform only one sedentary unskilled job in the national economy: document preparer. AR 67. But VE Young cautioned the ALJ that the 18,000 document preparer jobs in the economy should be eroded "at least 75 percent" because they either require more standing than Plaintiff is capable of, or because they require more computer skills than she has. AR 67-68. VE Young also testified that most assembly jobs are performed overseas, and do not exist in the in the U.S. "in any kind of numbers except in maybe unique situations." AR 68. But VE Young did not base her testimony on the DOT or her experience, instead, she based her testimony on the fact a professional group she belongs to was conducting a study to try to find sedentary, unskilled work; she did not testify the group completed that study or reached a conclusion. AR 68-69. In any event, the ALJ could "not accept that testimony" and was "speechless": "If it's the truth, if something's changed, I'm happy to accept it, but I need further confirmation on that." AR 71. The ALJ accordingly ordered a supplemental hearing with a different ALJ – ALJ Linvill. It was not error for the ALJ to reject testimony that was neither based on the DOT nor on the VE's

14

testified someone with Plaintiff's RFC could work as scanner & electronic filer; addresser; and cashier II. AR 80. Use of a cane would not erode the jobs that that individual could perform, nor would frequent hand use or sitting only two hours at a time. AR 80-83. Plaintiff's counsel asked VE Linvill "if someone were an insulin dependent diabetic who needed breaks to administer their insulin, would that do anything to erode [the] job base? . . . [T]hree, 20 minute breaks [outside of the regularly scheduled breaks.]" AR 83. VE Linvill testified that, based on his experience,

> [i]n the general sense, an employer is unhappy with an employee that takes a 20 minute break unscheduled. . . . [W]hen productivity falls – above a certain level, they are able to do enough that they're meeting the mission of their job. That number to me looks like about 15 percent of the day. [I]f a person [is] pulled away from work greater than 15 percent of the day as a result of medical necessity, they're not going to meet minimum productivity requirements. . . . 60 minutes a day is less than 15 percent. [73] minutes in a day is greater than 15 percent. AR 84-85.

VE Linvill's assessment concerning breaks was based on his experience, not the DOT. AR 83.

In her decision, the ALJ stated that Plaintiff's "hypothetical questions, including those that involved extra breaks or being off task due to insulin dependence or poor memory complaints are not supported based on her severe impairments." AR 30. The ALJ does not identify any evidence to support her apparent contention that Plaintiff would not need to take unscheduled breaks to test her blood or administer injections, or that such breaks would not result in Plaintiff being unproductive more than15% of the day (*see* AR 84-85).

Dr. Barnes, a testifying medical expert whose opinion the ALJ gave "significant weight" (AR 26), acknowledged Plaintiff should avoid driving and working at heights "entirely because with her rather high sugars, she might have problems with diabetic coma which would be a problem for her in those occupations." AR 44-45. The ALJ did not inquire about the frequency of diabetic coma incidents Plaintiffs may have experienced. She also did not ask Dr. Barnes (an orthopedic expert) to address the impact of Plaintiff's diabetes or of her extensive medication regiment on her ability to work. The ALJ did not otherwise enquire about the impact of this

---

experience, but rather on her anticipation of an ongoing study's results.

15

condition on Plaintiff's ability to work a full day: for example, asking Plaintiff about the frequency and type of effects she experienced if she did not timely inject herself; when Plaintiff injected herself or tested herself, and how many of her six daily injections or her four daily blood tests would need to be given during regular work hours; or the amount of time it would take to complete the process at work (e.g., would she need to leave her desk, go to the breakroom or bathroom, find a needle disposal box, return to her desk, etc.). If Plaintiff needed to leave her desk to perform either task, the tasks might take longer as a result of Plaintiff's observed slow gait. AR 1208 (observing "slow waddling gait" but no assistive device); *see also* AR 1350-51 ("She will need a cane or walker when ambulating for more than a block because of her instability in her low back and because of her morbid obesity."). Similarly, Plaintiff testified that as a result of her diabetes, she had to use the restroom more than four times at night (AR 56), but the ALJ did not ask Plaintiff how many times she would need to do so during a regular workday. The ALJ did not reject this testimony. AR 24-28. The ALJ also did not reject Plaintiff's testimony of fatigue resulting from her poor sleep. AR 24-28, 57-58. Despite receiving testimony and evidence regarding the multiple medications Plaintiff took to control her diabetes, and despite the fact Plaintiff's counsel asked the VE to testify whether someone who was off-task a certain amount of time as a result of injecting herself with medication, the ALJ did not address the mechanics and time it would take Plaintiff to take her medications during the work-day.

Plaintiff argues the ALJ's RFC is not supported by substantial evidence, including because it does not consider that Plaintiff must take frequent breaks to check her blood sugar and to inject insulin several times a day. PMSJ at 18. Plaintiff further argues the ALJ erred in finding that Plaintiff could perform jobs that exist in significant numbers in the national economy because she rejected Plaintiff's hypothetical to the VE that accounted for breaks to administer injections. *Id.* at 21-22. In a footnote, Defendant responds that "Plaintiff fails to explain how the assessed RFC does not accommodate her alleged symptoms and how those symptoms limit her beyond the RFC . . . Notably, other than pointing to diagnoses and properly discounted medical opinion, Plaintiff does not provide any objective medical evidence that supports her allegations of error. . . . [N]o

16

1  functional limitations based on Plaintiff's diabetes . . . are warranted as mere diagnosis of an
2  impairment does not automatically warrant any functional limitation based on it." DMSJ at 11
3  n.11. Defendant's characterization is inaccurate. Plaintiff explains that the assessed RFC does not
4  account for the time she would be off-task when she injected herself up to six times a day or tested
5  herself up to four times a day. The undersigned agrees this was error. Furthermore, based on VE
6  Linvill's testimony that a claimant with Plaintiff's age, education, work experience, and RFC
7  would be unable to perform any work that existed in significant numbers in the national economy
8  if she were off-task for more than 73 minutes a work-day, the undersigned cannot find the error
9  was harmless. The undersigned further finds the ALJ did not develop the record on this issue.

     The undersigned, however, cannot remand the decision for immediate payment of benefits, as there is no evidence that Plaintiff's medication regimen would make her off task more to the degree where she would become unemployable. Plaintiff has not identified any evidence, and the Court has found none, describing how long Plaintiff's injection and testing regimen takes.

### D. Meet or Equal a Listing

     Plaintiff argues the ALJ erred in finding she did not meet or equal Listing 1.04 Disorders of the Spine. *See* PMSJ at 10-11, 14-16.

     The ALJ's entire analysis for determining whether Plaintiff met or equaled a listing is two lines long: "I considered the relevant listing and the claimant's impairments do not meet or medically equal the severity of any listing or combination of listings, including listings (Medical Expert Testimony)." AR 24.[3] The ALJ does not mention Listing 1.04, much less explain why the medical evidence of record was insufficient to establish whether Plaintiff displayed evidence of nerve root compression or the spinal cord.[4] This was error: "An ALJ must evaluate the relevant

---

[3] Defendant characterizes this passage as follows: "[T]he ALJ specifically addressed Listing 1.04 and correctly observed that there were no medical findings consistent with the Listing." DMSJ at 3.

[4] The ALJ's failure to focus on Listing 1.04 is understandable. Besides a reference in passing during the February 2016 hearing regarding "disorders of the spine," Plaintiff did not argue she met or equaled Listing 1.04 until her appeal to this Court. Plaintiff did not apply for disability benefits based on any disorder of the spine, nor did she request reconsideration on that basis. *See*

17

evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (holding that ALJ erred by failing to consider evidence of equivalence)); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (ALJ must explain reasoning with sufficient specificity and clarity to "allow[] for meaningful review."). The ALJ also does not confirm that she considered Plaintiff's other severe conditions, including obesity and peripheral neuropathy, when evaluating whether she "meets or equals" any Listing. The Court can "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). The ALJ provides no reasons allowing this Court to perform a meaningful review.

## CONCLUSION

For the reasons stated above, the Court finds the ALJ's decision was not based on substantial evidence. In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Moreover, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved

---

AR 88-98, 99-112, 267-279. The only Listing that was considered by the SSA consultants performing the initial and reconsideration reviews was Listing 13.23 Female Genital Cancers. AR 94, 108. During the administrative proceedings, Plaintiff also did not argue that she met or equaled Listing 1.04; instead, she contended she met or equaled Listing 1.02 for Major Dysfunction of a Joint and Listing 12.04 for Depression. AR 288-290 (brief submitted before February 2016 hearing). In her request for review to the Appeals Council, Plaintiff did not argue she met or equaled any Listing. *See* AR 302-309. As the administrative proceeding before the Commissioner are not adversarial, Plaintiff's failure to raise this issue before her appeal to this Court does not prevent her from asking this Court to address it. *See Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("[W]e hold that a judicially created issue-exhaustion requirement is inappropriate. Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.").

before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the consideration of new evidence instead of awarding benefits).

The Court concludes this case should be remanded for further administrative proceedings. It is not clear from the record that the ALJ would be required to find Plaintiff disabled if the record was fully developed and all the evidence were properly evaluated. On remand, the ALJ shall: (1) reevaluate the weight she gave to Dr. Wiebe's opinion and Ms. Noa's declaration, and provide the necessary reasoning for doing so; (2) develop the record regarding the impact of Plaintiff's medication regimen for her diabetes on her ability to work and, if necessary, develop the record regarding Plaintiff's depression, anxiety and other affective disorders, which her treaters first diagnosed in February 2014; (3) evaluate whether Plaintiff meets or equals Listing 1.04, taking into consideration the impact of all her severe impairments; and (4) if necessary, obtain further testimony from a VE to determine whether Plaintiff is capable of performing work that is available in significant numbers if the ALJ determines she incorrectly rejected opinions and/or the expanded record warrants it.

For these reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the ALJ's decision. This case is **REMANDED** for further administrative proceedings in accordance with this Order.

**IT IS SO ORDERED.**

Dated: April 6, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge

19